**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOSEPH MATTHEW BORDERS,**

      **Petitioner,**                               **Civ. No. 2:09-CV-616**
                                                        **Crim. No. 2:07-CR-86**
      **v.**                                                **JUDGE MARBLEY**
                                                        **MAGISTRATE JUDGE KING**

**UNITED STATES OF AMERICA,**

      **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner was convicted, on guilty pleas entered pursuant to a plea agreement, of one count of distribution of cocaine in violation of 21 U.S.C. § 841, one count of using, carrying and brandishing a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924 and one count of possession of a firearm not registered to him in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. §§ 5861, 5871. He was sentenced to one day imprisonment on the drug and machine gun convictions and to a mandatory consecutive five years in prison for the § 924 conviction. Doc. Nos. 55, 56. Petitioner did not timely appeal his conviction and sentence but thereafter sought relief under 28 U.S.C. § 2255. In his *Amended Motion to Vacate, Set Aside, or Correct Sentence*, Doc. No. 79 [hereinafter "*Amended Petition*"], Petitioner alleges that his retained trial counsel was constitutionally ineffective in a number of respects. As it relates to the issue presently before the Court, Petitioner specifically alleged that his "counsel was ineffective for not entering notice of appeal when instructed to do so within (10) days." *Id.* at 3. This Court previously rejected Petitioner's claims. *Report and Recommendation*, Doc. No. 107; *Opinion and Order*, Doc. No. 120. On June 13, 2012, the United States Court of Appeals for the Sixth Circuit remanded the case for an evidentiary hearing on Petitioner's claim that Petitioner "was

provided ineffective assistance of counsel concerning his request to appeal." *Borders v. United States of America*, Nos. 11-3402/3695 (6th Cir. June 13, 2012), Doc. No. 135. New counsel was thereafter appointed for Petitioner and, on September 5, 2012, an evidentiary hearing was held. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the *Amended Petition* be **GRANTED** on Petitioner's claim of ineffective assistance of counsel concerning Petitioner's request to appeal, that the final judgment of conviction, Doc. No. 56, be **VACATED,** that a new judgment be entered and that a timely notice of appeal be filed on Petitioner's behalf.

**I.**

After the imposition of sentence, to which no objection was made, *Sentencing Transcript*, Doc. No. 83, p. 36, Judge Holschuh, the trial judge, advised Petitioner of his right to appeal, of the time limit for filing an appeal, and of his right to counsel on appeal:

> I do advise you that you have a right to appeal your sentence if you feel for any reason that the sentence I've imposed is not a reasonable sentence. Any appeal must be commenced by the filing of a Notice of Appeal with the Clerk of this court, the District Court, within ten days following the filing of the Court's judgment. If you're unable to pay the costs of an appeal, you have the right to apply for leave to appeal in forma pauperis, which means without the payment of any cost or expense to you.
>
> Furthermore, if you so request, the clerk of this court will forthwith file a Notice of Appeal on your behalf.

*Id*. at 36-37. Petitioner did not indicate that he wanted to file an appeal, but he did tell the trial judge that he "thought I was going to get probation or parole, to be honest, because of the help I gave with [sic] the Government." *Id.* at 39.

Petitioner's father, Earl Borders, testified at the evidentiary hearing that he attended Petitioner's August 7, 2008, sentencing, *Evidentiary Hearing Transcript*, Doc. No. 146, at 7-8, and

2

that he overheard Petitioner speaking to Christopher Cicero, Petitioner's attorney, as they walked out of the court house:

> Yeah. Well, Joey was irritated. And we started walking out, almost to the street, and he says – Mr. Cicero asked my boy, he said, Well, what do you think?
>
> And he said, Well, I got prison time!
>
> And he says, You're lucky you only got five years, instead of seven.
>
> And he says, Well, I want to appeal!

*Id.* at 10. Earl Borders was insistent that Petitioner asked his counsel "to file an appeal," *id.* at 10, although the witness did not hear counsel's response. *Id.* at 11.

Petitioner, who has served his term of imprisonment and is now serving a term of supervised release, testified at the evidentiary hearing that Mr. Cicero had represented Petitioner in prior state court criminal proceedings, *id.* at 17-18, and that it was his father who retained Mr. Cicero to assist Petitioner in this matter. *Id.* at 17. Prior to the entry of his guilty pleas, Petitioner discussed with defense counsel the advantages and disadvantages of proceeding to trial or accepting the terms of the plea agreement. *Id.* at 18. Were he to go to trial, his attorney advised him, he could be sentenced to a term of imprisonment of up to thirty seven years. *Id.* at 18,19. If he accepted the plea agreement, however, he faced "somewhere around seven years." *Id.* at 19, 21. After he entered his guilty pleas, *id.* at 22, he was told by the mother of his son, Angela Lejcerowicz, who was "working with the government," *id.* at 21, that, according to government agents, he was "likely to receive probation" should he cooperate. *Id.* at 22. Prior to the entry of his guilty pleas, Petitioner testified, he knew of "several friends that have been in trouble with the federal government, and they have received prison sentences greater than seven years that they did halfway house time and supervised

release." *Id*. at 22. *See also id.* at 23. Petitioner relied on this understanding in entering his guilty pleas. *Id*. at 22.

At the time of sentencing, Petitioner understood that the *Presentence Investigation Report* recommended a sentence of 12 years incarceration. *Id*. at 25. His defense counsel continued to advise Petitioner that the actual sentence would likely be seven years incarceration. *Id.* at 26; 35; 37. Nevertheless, Petitioner believed, prior to sentencing, that he would be placed on "probation, supervised release . . . because [w]e're talking about a cocaine amount, a first-offense cocaine amount, of this big (indicating), of 1.6 grams, first offense." *Id.* at 26.

> You know, I'm thinking that there's just no way that someone could go to prison for such a small amount of cocaine when it's their first offense ever. . . And I'm thinking, well, we helped the government for the past 15 months. How could I go to prison for something as insignificant as a 1.6 of cocaine? I was wrong.

*Id.* at 27.

Petitioner was "very mad" at the sentence actually imposed. *Id.* at 28. According to Petitioner, he told Judge Holschuh as the latter was leaving the courtroom, "'Don't worry. I'm going to appeal the sentence.'" *Id.* at 28.[1] As Petitioner and his counsel were leaving the court room, his attorney asked Petitioner what he thought, to which Petitioner responded, "Are you. . . kidding me? I just got prison! . . . I want you to appeal the sentence." *Id.* at 30. His attorney asked Petitioner, "Are you. . . serious? . . . You just got five years, instead of seven." *Id.* "I said, I don't care. I want you to appeal the sentence, because the judge says I didn't do it."[2] *Id.*; *see also id.* at 31.

---

[1]The *Sentencing Transcript* does not reflect this statement.

[2] "The judge says that all three elements have to be met: carry, use, and brandish. . . and I'm hearing him say the brandishing element wasn't met. And I'm thinking, well, I'm not guilty of this

4

> I understand it sounds crazy. It sounds crazy. He's supposed to get
> seven, he gets five, and he wants to appeal the sentence? Is the guy
> out of his mind? I understand it sounds crazy; but me, going into it,
> I thought I wouldn't receive a prison sentence at all.

*Id.* at 39.

In the days following the sentencing, Petitioner telephoned his attorney's office on a number of occasions but never actually spoke with Mr. Cicero. *Id.* at 32, 41-42. He left messages with the secretary asking about the status of his appeal. *Id.* at 32 During the final telephone conversation, Mr. Cicero's secretary advised Petitioner that "he's going to go ahead and do it." *Id.* at 33. Some time later Petitioner learned that, in fact, an appeal had not been filed and that it was then too late to do so. *Id.* at 33-34.

Christopher Cicero testified at the evidentiary hearing that, at the time of sentencing, Petitioner was facing a statutory mandatory minimum term of seven years incarceration. *Id.* at 48. The sentence was reduced to five years upon oral motion of the United States. *Id.* at 48-49. However, Mr. Cicero recalled that Petitioner "didn't think he should have done one day in prison." *Id.* at 59. The attorney knew that Petitioner was not happy with the sentence that was imposed. *Id.* at 61.

Mr. Cicero did not recall speaking with Petitioner after sentencing regarding the filing of an appeal. *Id.* at 49. "And to clarify, if you're asking me did he ever ask me, that would be no." *Id. See also id.* at 62 ("Q. And . . . he's never asked you to file an appeal in this case? A. No.").

Mr. Cicero explained that he does not pursue appeals on behalf of clients. *Id.* at 49. "And if a client would ever ask to have his case appealed, I would direct them someplace else. . . . That

---

crime." *Evidentiary Hearing Transcript*, at 31.

is my practice. I just don't do [appeals]." *Id*. at 50. Mr. Cicero has never filed a notice of appeal in federal court; it is his understanding that, once sentence is imposed, his obligation to the client is at an end. *Id.* at 52. Had Petitioner asked him to file a notice of appeal, "I probably would have directed him in this instance, to the public defender's office here." *Id.*

## II.

The failure of an attorney to file a timely appeal after having been requested to do so by a defendant constitutes the ineffective assistance of counsel.

> [E]very Court of Appeals that has addressed the issue has held that a lawyer's failure to appeal a judgment, in disregard of the defendant's request, is ineffective assistance of counsel regardless of whether the appeal would have been successful or not. *See Castellanos v. United States,* 26 F.3d 717, 719 (7th Cir. 1994); *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993); *United States v. Horodner*, 993 F.2d 191, 195 (9th Cir. 1993); *Bonneau v. United States*, 961 F.2d 17, 23 (1st Cir. 1992); *United States v. Davis,* 929 F.2d 554, 557 (10th Cir. 1991); *William v. Lockhart,* 849 F.2d 1134, 1137 n.3 (8th Cir. 1988).

*Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000).

The Court expressly finds that Petitioner asked his attorney to pursue an appeal on his behalf. The testimony of Petitioner and his father in this regard is credible. That Petitioner wanted to pursue an appeal is consistent with the uncontroverted evidence that Petitioner was unhappy – indeed, "very mad" – with his sentence. Although Mr. Cicero knew that Petitioner was dissatisfied with the sentence, he insisted that Petitioner did not request that a notice of appeal be filed on his behalf. The Court declines to credit Mr. Cicero's testimony in this regard. Mr. Cicero's recollection of events on virtually every other point was vague at best. Moreover, Mr. Cicero's misapprehension of his duty to his client, *see* 6 Cir. R. 12(c)(1)("Trial counsel in criminal cases must continue

6

representation of the defendant on appeal unless relieved by the court."), would suggest that he may not have attached to any such request the significance that the request warranted.

In short, the Court concludes that Petitioner has established that he was denied the effective assistance of counsel because his attorney failed to file a timely notice of appeal after having been requested to do so.

It is therefore **RECOMMENDED** that the *Amended Petition* be **GRANTED** on Petitioner's claim of ineffective assistance of counsel due to his attorney's failure to file a timely appeal, that the judgment of conviction, Doc. No. 56, be **VACATED,** that a new judgment be entered and that a notice of appeal be filed on Petitioner's behalf.

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court

adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

 *s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge

September 17, 2012